IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION



| | | |
|---|---|---|
| BILLY LANE WELCH, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:20-CV-132-Z-BR |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## ORDER OVERRULING OBJECTIONS,
## ADOPTING FINDINGS, CONCLUSIONS AND RECOMMENDATION,
## AND
## DENYING PETITION FOR A WRIT OF HABEAS CORPUS

This matter comes before the Court on Petitioner's Petition for Writ of Habeas Corpus, filed May 21, 2020 (ECF No. 10) ("Petition") and Supplemental Brief in Support of Petition of Writ of Habeas Corpus, filed June 30, 2020 (ECF No. 8) ("Supplemental Brief"). This case was referred to the United States Magistrate Judge, who on July 7, 2020 recommended that the Petition be denied. *See* ECF No. 10, at 5 ("FCR"). Plaintiff objects to this recommendation. *See* ECF No. 11. After an independent and de novo review, *see* FED. R. CIV. P. 72(b)(3), the Court OVERRULES Defendant's objections, ADOPTS the FCR, and DENIES the Petition.

### BACKGROUND

In February 2017, Petitioner was convicted of the state felony offense of aggravated assault with a deadly weapon and was sentenced to six years of imprisonment.[1] He first became eligible

---

[1] *See* Texas Department of Criminal Justice, Offender Information Details: Billy Lane Welch, https://offender.tdcj .texas.gov/OffenderSearch/offenderDetail.action?sid=02363015 (last visited August 11, 2020) ("Offender Information").

1

for early release to parole just five months later, but the parole board has not yet chosen to release him even after at least one parole hearing. *Id.* Due to a one-year setoff from his January 2020 parole hearing, Petitioner next is eligible for parole in January 2021. If he does not receive parole at that hearing, he is projected to be released from the TDCJ Neal Unit on December 16, 2022. *Id.*

During his time in prison, Petitioner has accrued so many good conduct time credits that his flat service time and these time credits combined exceed the total length of his sentence by nearly twenty percent. *See* TDCJ Inmate Status Report, *in* Petition at 2. Petitioner believes he is entitled to early release as a result, despite Texas law that prohibits parole for those convicted of aggravated assault. *See* Petition at 1; Supplemental Brief at 2–3. He asks the Court (1) to recognize that the relevant state law violates the Equal Protection Clause, the Due Process Clause, and the Ex Post Facto Clause; and (2) to order his release to parole. *See* Supplemental Brief at 3-8.

LEGAL STANDARD

**A. Texas House Bill 1433 of 1995**

Into the early 1990s, Texas law prohibited TDCJ from releasing an inmate to parole if he or she was serving a sentence for aggravated assault. *See* 1993 Tex. Sess. Law Serv. Ch. 888 (West). The Texas legislature cabined early release further in 1995 via H.B. 1433, which denied parole to any offender who "has *previously* been convicted" of aggravated assault. 1995 Tex. Sess. Law Serv. Ch. 263 (H.B. 1433) (West) (emphasis added). The same bill also significantly expanded the power of parole panels, which now may deny parole to any otherwise eligible inmate it considers incompletely rehabilitated or dangerous to the public. *See id.* § 2.

**B. Equal Protection Clause**

The Equal Protection Clause "embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799 (1997); *see also Plyler*

*v. Doe*, 457 U.S. 202, 216 (1982) ("[T]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same."). If a legislative classification or distinction neither burdens a fundamental right nor targets a suspect class, it only violates equal protection if it bears no rational relation to some legitimate end. *See Romer v. Evans*, 517 U.S. 620, 631 (1996).

### C. Ex post facto changes in laws governing prisoner parole

The federal constitution prohibits passage of ex post facto laws. *See* U.S. CONST. art. I, § 9, cl. 3; *id.* art. I, § 10, cl. 1. Though the Constitution nowhere expressly defines what an ex post facto law is, the United States Supreme Court reads the clause to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission. *Garner v. Jones*, 529 U.S. 244, 249 (2000). In some instances, retroactive changes in laws governing parole of prisoners may violate this precept. *See Lynce v. Mathis*, 519 U.S. 433, 445–46 (1997). Whether retroactive application of a change in parole law violates the Ex Post Facto Clause "is often a question of particular difficulty when the discretion vested in a parole board is taken into account." *Garner*, 529 U.S. at 250.

ANALYSIS

### A. Equal protection claim

Petitioner asserts another TDCJ inmate convicted under a different part of the Texas Penal Code obtained early release in 1972. He infers therefrom that Texas state law violates the Equal Protection Clause when it categorically denies parole to inmates with an aggravated assault conviction. *See* Supplemental Brief at 5. The Court cannot agree. Petitioner does not have a fundamental constitutional right to parole. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7-8 (1979). Nor is he a member of a suspect class. *See* Offender Information

at 1 (reporting that Defendant is a white male). Thus, the Court need only assess whether the Texas legislature's distinction between offenses for which parole is permitted versus forbidden under H.B. 1433 "bears a rational relation to some legitimate end." *Romer*, 517 U.S. at 631.

It is well established that, when the statute's language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms. *Sebelius v. Cloer*, 569 U.S. 369, 381 (2013); *United States v. Marshall*, 798 F.3d 296, 319 & n.38 (5th Cir. 2015). When construing statutes and regulations, the Court must begin with the assumption that the words were meant to express their ordinary meaning. *United States v. Kaluza*, 780 F.3d 647, 659 & n.36 (5th Cir. 2015). Only after application of the principles of statutory construction, including the canons of construction, and after a conclusion that the statute is ambiguous may the court turn to the legislative history. *Schaeffler v. United States*, 889 F.3d 238, 242 (5th Cir. 2018).

H.B. 1433 is short, and its text unfortunately does not expressly divulge the Texas legislature's end in making the criminal procedure changes the bill contains. Nor do the canons of statutory construction elucidate the sparse bill language. Because ambiguity remains despite the application of these canons to the plain text of H.B. 1433, the Court turns to the legislative documents produced in connection with the creation of the bill. *See Schaeffler*, 889 F.3d at 242. In doing so, the Court uses this data as *evidence* of the "ordinary public meaning" of the bill text at the time that it was enacted — not to give effect to a given legislator's revealed "intent," which does not have the force of law. *See generally* A. SCALIA, A MATTER OF INTERPRETATION 17 (1997) ('Government by unexpressed intent is similarly tyrannical. It is the *law* that governs, not the intent of the lawgiver. . . . A government of laws, not of men. Men may intend what they will; but it is only the laws that they enact which bind us.").

The Court notes the House Committee on Corrections chose to deem violent felons ineligible for parole because it considered them a "potential threat to the public" if they were released early from prison. Tex. H.R. Rep. on H.B. 1433 (May 11, 1995), at 2. Given that violent crime surged in Texas in the early 1990s[2] just as an order from the Southern District of Texas required the state to reduce overcrowding in its prisons,[3] legislators' desire to skew parole toward inmates least likely to present a risk to public safety "bears a rational relation to some legitimate end." *Romer*, 517 U.S. at 631. As such, the Court must find that Petitioner's equal protection claim is unfounded.

### B. Due process claim

Defendant also insists H.B. 1433 violates the Fifth and Fourteenth Amendments insofar as it deprives him without due process of a liberty interest in parole. *See* Supplemental Brief at 3-5. But as noted above, states have no constitutional obligation to establish a parole system. *See Greenholtz*, 442 U.S. at 7-8. Texas has chosen to establish such a system but clearly states parole remains a "*privilege* rather than a state-created right." 37 Tex. Admin Code § 145.3(1) (emphasis added). Therefore, TDCJ inmates have no right to early release. *See Orellana v. Kyle*, 65 F.3d 29, 31–32 (5th Cir. 1995). Because he lacks a right to early release, Petitioner cannot have a derivative due process right in any part of parole consideration — including a parole panel's application of good conduct time credits. *See Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997); *Allison v. Kyle*, 66 F.3d 71, 74 (5th Cir. 1995). Consequently, Petitioner's due process challenge to H.B. 1433 must fail.

---

[2] *See* Texas Dep't of Public Safety, *Texas Crime Analysis* 11 fig.1, *in* THE TEXAS CRIME REPORT FOR 1999, https://www.dps.texas.gov/crimereports/99/Crime%20in%20Texas%20CH%202.pdf (displaying approximately a thirty percent rise in violent crime in Texas 1990-1994 compared to 1985-1989) (last visited August 11, 2020).
[3] *See Ruiz v. Estelle*, 503 F. Supp. 1265 (S.D. Tex. 1980). Although Judge Justice found in 1980 that overcrowding in Texas prisons violated the Eighth Amendment, litigation in the case was ongoing for the three decades 1972-2002.

### C. Ex post facto claim

The Court need not here solve a riddle recondite enough to befuddle the Sphinx. The revisions to parole practice contained in H.B. 1433 of 1995 took effect *two decades before* Petitioner committed his offense of incarceration. *See* 1995 Tex. Sess. Law Serv. Ch. 263 (H.B. 1433*)* (West). Thus, it is impossible the Texas legislature here passed a *retroactive* law increasing the punishment of Petitioner's crime after its commission. *See Garner*, 529 U.S. at 249. Accordingly, Petitioner's ex post facto challenge must fail.

### D. Application of H.B. 1433 to petitioner

Because all Petitioner's claims opposing the constitutionality of H.B. 1433 are unsound, the Court next analyzes whether TDCJ correctly applied the bill's provisions to Petitioner's case. It incontrovertibly did. At the time Petitioner was incarcerated, Texas law stated: "An inmate may not be released to mandatory supervision if the inmate is serving a sentence for . . . a first degree felony or a second degree felony under Section 22.02 [of the Texas] Penal Code." Tex. Gov't Code § 508.149(a)(7) (2016). At that time, Section 22.02 of the Texas Penal Code covered aggravated assaults. *See* Tex. Penal Code § 22.02 (2016). Petitioner is serving a sentence for the offense of aggravated assault. Accordingly, the Court must conclude that TDCJ correctly applied H.B. 1433 when it declined to grant Petitioner early release.

For all the foregoing reasons, the Court (1) OVERRULES Petitioner's objections to the FCR; (2) ADOPTS the United States Magistrate Judge's findings, conclusions, and recommendation in full; and (3) DENIES the Petition for a Writ of Habeas Corpus.

**SO ORDERED.**

August __11__, 2020.

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE